UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
        KATHERINE BURGIO,        10-12259 B

             Debtor        <u>DECISION & ORDER</u>
------------------------------------------------------

        Law Offices of Peter D. Grubea
        Peter D. Grubea, Esq., of counsel
        482 Delaware Avenue
        Buffalo, New York 14202
        Attorney for the Debtor

        Penney, Maier & Wallach
        Mark S. Wallach, Esq., of counsel
        169 Delaware Avenue
        Buffalo, New York 14202
        Attorneys for the Chapter 7 Trustee

Bucki, Chief U.S.B.J., W.D.N.Y.

      The debtor has moved to compel the Chapter 7 trustee to abandon his interest in an automobile that is at least partially exempt under New York law. At issue is the sufficiency of proof needed to establish the inconsequential value and benefit of property that the trustee would otherwise attempt to liquidate. Underlying this dispute, however, is the need to balance the rights of the trustee to any non-exempt equity as against the debtor's desire to protect her exemption from the consequences of a forced sale.

      Katherine Burgio filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 25, 2010. In schedules filed with her petition, the debtor acknowledges ownership of a 2005 Hyundai Sonata automobile. She further asserts her right under New York law to exempt $2,400 of the value of that car. *See* N. Y. DEBT. & CRED. LAW § 282(1)(McKinney 2001). No outstanding liens encumber the Sonata, so that Ms. Burgio and the bankruptcy estate are the only parties having an interest in that asset.

On August 23, 2010, this court heard argument on the trustee's motion to direct the debtor to turn over the Sonata automobile. In response, the debtor argued that she had claimed an exemption for the vehicle, that the automobile might sell for less than the amount of her exemption, and that a sale and payment of the auctioneer's 10% commission could jeopardize a realization of the full amount of her exemption. Giving due consideration to the interests of both the debtor and the trustee, the court signed an order for turnover, but on condition that in the event of an auction, the debtor be "permitted to credit bid to the extent of $2,400 representing her exemption in the vehicle as well as 10% of the ultimate sale price of the vehicle in the event the auctioneer does not sell the vehicle with a 10% buyer's premium to be paid by the ultimate successful purchaser." Now, in her present motion, Ms. Burgio seeks reconsideration of the prior turnover order, together with an order that would compel the trustee to abandon his interest in the debtor's automobile.

The parties do not dispute the admissibility of evidence that each has presented with regard to the value of the vehicle. The National Automobile Dealers Association ("NADA") has published a guide indicating that as of the date of bankruptcy filing, the Sonata had a "rough trade-in" value of $3,850, an "average trade-in" value of $4,675, a "clean trade-in" value of $5,350, a "clean loan" value of $4,875, and a "clean retail" value of $7,425. The trustee also represented that he had accessed the website for "Kelly Blue Book" and that this source indicated values that ranged between $3,675 and $8,505 at the time of his review on August 28, 2010. Meanwhile, the debtor contends that these "blue book" calculations overstate her car's value, in part because the vehicle was twice repaired for damages resulting from front-end collisions. Instead, she has submitted a one-sentence letter from the general manager of an automobile dealer, who states that the Sonata would have a value between $2,000 and $2,500.

In her argument, the debtor assumes that the trustee will liquidate the car through an auction. For purposes of the present motion, therefore, she asserts that the probable

auction price represents the best indication of value. The debtor then proposes a downward adjustment of value for administrative costs, including trustee commissions, auction fees and expenses, and related legal fees. Asserting that the net value would not materially exceed her exemption, the debtor asks the court to compel an abandonment of the vehicle. The trustee responds that because the motion to compel abandonment seeks to allow the debtor to retain the vehicle, the court should rely on retail value. From the trustee's perspective, administrative expenses should have no impact on the outcome of the motion, but serve only as a factor that the trustee may choose to consider in the exercise of sound business judgment.

Discussion

Property of the estate will generally include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). With respect to such property, the Bankruptcy Code establishes two corresponding obligations. Section 704(a) imposes upon the case trustee a duty to "collect and reduce to money the property of the estate for which such trustee serves." Meanwhile, section 521(a)(4) imposes upon the debtor a duty to "surrender to the trustee all property of the estate." To the extent that the debtor fails to surrender property, the trustee may move under 11 U.S.C. § 542(a) to compel a turnover of that property to the estate. On the other hand, to the extent that particular property will provide inconsequential value to the estate, a debtor may avoid any turnover obligation by moving under section 554 to compel the trustee to abandon that asset. In the present instance, to address the trustee's administration of the debtor's automobile, the trustee and debtor have filed competing motions: by the trustee to compel a turnover and by the debtor to compel the trustee's abandonment.

Section 542(a) of the Bankruptcy Code provides generally that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, *or that the debtor may exempt under section*

*522 of this title*, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a)(emphasis added). In her schedules, the debtor acknowledges ownership of the Sonata automobile. Unless exempt from administration, the car has become property of the bankruptcy estate. In either instance, however, section 542(a) directs its turnover to the trustee. Consequently, under this statute, the trustee sustained his burden of proof to secure a turnover order. Admittedly, section 542(a) recognizes an exception for property that "is of inconsequential value or benefit to the estate." Because it involves an exception to the general rule of turnover, however, the burden to show such inconsequential value would fall upon the debtor.

With respect to the debtor's motion for abandonment, section 554 imposes essentially the same standard and evidentiary burden that section 542(a) establishes with regard to a trustee's motion for turnover. In relevant part, section 554(b) states that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Here again, the burden falls upon the movant to "prove by a preponderance of evidence that the property has no greater than inconsequential value." *In re Siegel*, 204 B.R. 6, 8 (Bankr. W.D.N.Y. 1996). In the present instance, both with regard to her defense of the trustee's motion for turnover and with regard to her own motion for abandonment, the debtor has failed to sustain this burden.

The administration of a bankruptcy estate is generally left to the sound discretion of the trustee. Consequently, the court will not impose its judgment on how the trustee may choose to liquidate a particular asset, whether by auction, by private sale, or by a resale back to the debtor. So long as some method of sale holds a reasonable prospect of a meaningful recovery in excess of the debtor's vehicle exemption, the debtor cannot sustain her burden to show that the automobile would have only inconsequential value to

the estate. In the present instance, the evidence indicated the possibility of a private sale for as much as $8,505. Even if this price were discounted to reflect a history of collision repair, the trustee would still enjoy a reasonable prospect for the realization of value far in excess of any allowable exemption. This potential for consequential value will justify a turnover of the vehicle and will preclude an order for abandonment.

The debtor proposes that the court adopt an administrative rule of convenience that would establish a methodology for determining the value of any automobile that is subject to administration in Chapter 7. Uniform standards of valuation have been adopted in other bankruptcy contexts. For example, in *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997), the Supreme Court held that in Chapter 13, for purposes of applying the "cram down" provisions of 11 U.S.C. § 1325(a)(5)(B), a secured claim would be set by the "replacement-value" of the collateral. In 2005, Congress enacted 11 U.S.C. §506(a)(2), which similarly requires the use of "replacement value" as the standard for calculating the value of a security interest in personal property. In these regards, standards of valuation serve as a substitute for a market-driven determination of value. Because Chapter 13 contemplates that debtors may retain use and ownership of personal property, the court must apply a valuation standard to establish the limits of any allowable "cram down" of a secured claim. The present dispute is qualitatively different, however. Chapter 7 contemplates that a case trustee will liquidate property of the estate. Thus, 11 U.S.C. § 704(a)(1) directs that the trustee shall "collect and reduce to money the property of the estate for which such trustee serves . . . ." To facilitate the ability of the trustee to fulfill this obligation, 11 U.S.C. § 542(a) commands that all parties in possession of estate property shall deliver that property to the trustee. Whereas the debtor in Chapter 13 may retain assets, the case trustee in Chapter 7 will manage their liquidation at values to be determined by market factors. With access to markets of liquidation, the case trustee can derive the true value of assets and need not be limited by unreliable estimates or any particular methodology of valuation.

The most likely purchaser of estate assets is often the debtor herself. Having need for reliable transportation, the debtor may prefer to repurchase her existing vehicle rather than to acquire a substitute automobile at retail cost. Meanwhile, the trustee may prefer to avoid the risk and expense of an auction sale. In negotiating terms of sale, however, the trustee and debtor may each pursue strategies that account for outstanding market options. In light of the fact that the debtor would pay retail value for any substitute vehicle, the trustee may appropriately seek the retail value of estate property. In light of the fact that the trustee might otherwise sell the property at auction, the debtor would understandably offer only liquidation value. The negotiation process provides a methodology for determining an appropriate price somewhere on the continuum between retail and liquidation value. So long as the parties proceed in good faith and in compliance with applicable law, the court will not interfere with their negotiations. In the absence of any higher or better bid, the court will generally not reject a proposed sale for a price that falls within the range of reasonableness. With trust in the negotiation process, I reject the debtor's request to impose an administrative rule that would set any value for estate property.

In the present instance, the range of "blue book" values includes an estimate of liquidation through private sale for an amount sufficient to net a meaningful recovery for the estate. By reason of the possibility of such recovery, the debtor fails to sustain her burden to show such inconsequential value as would compel an abandonment by the trustee. Although trustees must attempt in good faith to maximize a return for the estate, they do not guarantee the amount of any final recovery. The market may yield an unexpectedly low price and administrative costs may exceed reasonable projections.[1]

---

[1] In a typical consumer case, the liquidation of an automobile should entail only minimal legal expense. Pursuant to 11 U.S.C. §521(a)(4), a debtor is obligated to surrender estate property to the trustee, without the necessity of an order directing turnover. In the present instance, however, the debtor did not voluntarily surrender her car. Having thereby caused the trustee to incur the costs of a turnover motion, the debtor may not now assert that the trustee's legal expense should enhance her argument for abandonment.

Thus, the possibility will always exist that the liquidation process may net only a minimal fund for distribution to creditors. Nonetheless, this risk of minimal recovery provides no basis for a reconsideration of the outstanding order for turnover. With respect to the instant case, New York law allows the debtor to exempt an automobile only to the extent of $2,400 of value. The debtor has no right to receive any greater share of proceeds. Accordingly, a trustee may seize and proceed to sell any property having a potential value of consequence to the estate, provided that liquidation procedures include appropriate measures to protect the debtor's exemption. Pursuant to this court's previous order, these measures included the opportunity to credit bid for the amount of the exemption plus the accompanying portion of any auctioneer commission.

For the reasons stated herein, the debtor's motion is denied in all respects. Accordingly, the court denies the debtor's request to compel an abandonment of the 2005 Sonata automobile, as well as the request for reconsideration of the prior turnover order.

So ordered.

Dated:      Buffalo, New York                    /s/      CARL L. BUCKI
            December 23, 2010                    Carl. L. Bucki, Chief U.S.B.J., W.D.N.Y.